IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| SENORA P. ATAKULU | * | |
| | * | |
| **Plaintiff,** | * | |
| v. | | Case No.: GJH-14-0904 |
| | * | |
| MARYLAND DEPARTMENT OF HUMAN RESOURCES | * | |
| | | |
| **and** | * | |
| | | |
| PRINCE GEORGE'S COUNTY DEPATMENT OF SOCIAL SERVICES | * | |
| | * | |
| **Defendants.** | | |
| | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM OPINION

This Memorandum and Order addresses Plaintiff's Motion to Reopen Case, ECF No. 14, and supporting memorandum, ECF No. 14-1; Defendants' joint Opposition to Plaintiff's Motion to Reopen Case, ECF No. 15, and supporting memorandum, ECF No. 15-1; and Defendants' joint Motion to Dismiss Plaintiff's Complaint, ECF No. 11, and supporting memorandum, ECF Nos. 11-1. I find that a hearing is unnecessary in this case. *See* Local Rule 105.6. For the reasons stated below, Plaintiff's Motion to Reopen Case is DENIED and Defendants' joint Motion to Dismiss is GRANTED.

## I.   BACKGROUND

Plaintiff Senora Atakulu ("Atakulu") was formerly employed by Defendant Prince George's County Department of Social Services ("DSS").  ECF No. 1, ¶ 2.  Atakulu was hired by DSS as a Family Support Worker on or around August 29, 2007.  *Id.* at ¶ 5.  At the time she was hired, Atakulu was 58 years old.  *Id.* at ¶ 6.  On or around November 1, 2010, Atakulu sustained an on the job injury to one of her ankles.  *Id.* at ¶ 10.  As a result of her injury, Atakulu requested that DSS place her on light duty or allow her time-off in order to recuperate from her injury.  *Id.* at ¶ 11.  DSS refused both requests and continued to assign Atakulu to perform the full duties of her position.  *Id.* at ¶ 12.

Then, on November 15, 2010, Atakulu reinjured her ankle when she slipped on a rug while performing her job duties.  *Id.* at ¶ 14.  As a result of these injuries, Atakulu consulted with a physician who recommended that she be placed on "light duty" from January 13, 2011 through March 14, 2012.  *Id.* at ¶ 17.  Consistent with that recommendation, on or around January 18, 2011, Atakulu requested to her superiors that she be given an accommodation in the form of leave and reassignment to a position that was less physically demanding.  *Id.* at ¶ 18.  On or around February 9, 2011, DSS refused her request.  *Id.* at ¶ 20.  Around that time, one of her superiors made discriminatory remarks regarding Atakulu's disability.  *Id.* at ¶ 21.

In response to DSS's refusal to accommodate her disability, Atakulu renewed her request, this time inquiring about the front desk position and the Lead Family Support Worker position.  *Id.* at ¶ 27.  On or around March 14, 2011, Atakulu's superiors advised her that no such positions were available.  *Id.* at ¶ 28.  Atakulu was not presented with any other possible reassignment positions.  *Id.*  According to Atakulu, however, numerous front desk personnel were either hired or transferred in from other departments between 2011 and 2012.  *Id.* at ¶ 30.  In fact, in or

2

around February 2012, Atakulu became aware that the Lead Family Support Worker position had been available in late 2011 and was assigned to a less qualified and less senior, twenty-four year old co-worker. *Id.* at ¶¶ 39, 41, 44.

In or around May 2011, Atakulu was given an unsatisfactory performance review by the superior she claims made discriminatory remarks in February 2011. *Id.* at ¶ 34. At the time of her performance review, Atakulu informed her superior that she believed her evaluation violated her Title VII rights. *Id.* at ¶ 35. On November 26, 2011, Atakulu filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming various violations under Title VII of the Civil Rights Act of 1964. *Id.* at ¶ 77. After filing her charge with EEOC, Atakulu's superior told her that he was tired of her complaints and that he could "get rid" of her and that he had gotten rid of other employees previously. *Id.* at ¶ 46. Shortly thereafter, on March 16, 2012, Atakulu received a letter from the Director of DSS indicating that it had become necessary to consider freeing her position. *Id.* at ¶ 48. Atakulu was given the option of resigning or choosing "regular Retirement or disability retirement." *Id.* at ¶ 49. Atakulu, however, wished to continue working and asked again for a reassignment to a sedentary position. *Id.* DDS refused. *Id.* Ultimately, on May 11, 2012, Atakulu was presented with resignation papers and was forced to quit. *Id.* at ¶ 51.

On July 12, 2013, more than a year and half after filing her formal Charge of Discrimination, EEOC issued Atakulu a Notice of Right to Sue on her EEOC complaint. *Id.* at ¶ 81. As such, Atakulu filed a *pro se* complaint against DSS and its Director, Gloria Brown, on September 10, 2013 in federal district court. *Id.* at ¶ 82; *see Atakulu v. Brown*, 13-cv-2633-PJM (D. Md. Nov. 25, 2013) (hereinafter referred to as "*Atakulu I*"). That same day, Atakulu filed a Motion for Leave to Proceed in Forma Pauperis. *See Atakulu I*, 13-cv-2633-PJM, ECF No. 2.

The Court granted Atakulu's request. *See id* at ECF No. 3. In doing so, however, the Court recognized that Atakulu had not furnished a U.S. Marshal service of process form for the defendants. *Id.* As such, the Court stated that until Atakulu cured this problem, service would not be issued. *Id.* Furthermore, the Court ordered the Clerk to mail a copy of the Marshal form for each defendant to Atakulu, who was required to complete and return it to the Clerk within twenty-one days of the Order. *Id.* The Court cautioned Atakulu that "[f]ailure to comply with this Order may result in dismissal without prejudice of the Complaint." *Id.* Ultimately, Atakulu did not comply with the Court's Order. ECF No. 1, ¶ 83. Accordingly, on November 26, 2013, the Court dismissed her Complaint without prejudice and directed the Clerk to close her case. *See Atakulu I*, 13-cv-2633-PJM, ECF No. 4. Then, on March 23, 2014, Atakulu filed the instant complaint against DSS and the Maryland Department of Human Services (collectively, "Defendants"). According to Atakulu, this complaint "shares identical claims asserted in her original complaint" in *Atakulu I. See* ECF No. 14-1 at 3. Defendants have moved to dismiss on various grounds, including that Atakulu's instant complaint was untimely filed. For the reasons discussed below, I will grant Defendants' motion on the basis that that Atakulu's complaint was untimely. Having determined that Atakulu's complaint was untimely, there is no need to address Defendants' other arguments as to whether or not Atakulu has adequately stated claims under Title VII.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. A "motion to dismiss challenging the timeliness of the claimant's charge is reviewed under Rule 12(b)(6)." *E.E.O.C. v. AMX Commc'ns, Ltd.*, 2011 WL 3555831, *3 (D. Md. Aug. 8, 2011).

## III.   DISCUSSION

### A.   Motion to Reopen Case Under Fed.R.Civ.P. 60(b)(1)

Prior to addressing Defendants' joint Motion to Dismiss, the Court will first address Atakulu's Motion to Reopen case. Specifically, Atakulu has asked the Court to reopen *Atakulu I* (*see Atakulu v. Brown*, 13-cv-2633-PJM (D. Md. 2013)) pursuant to Fed. R. Civ. P. 60(b). Federal Rule of Civil Procedure 60(b) authorizes a district court to grant relief from a final judgment for five enumerated reasons or for "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6).[1] Here, Atakulu seeks relief from the judgment under Rule 60(b)(1) for "mistake,

---

[1] Federal Rule of Civil Procedure 60(b) provides in full:

inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). Essentially, Atakulu argues that *this* Court should reopen *Atakulu I* – a decision rendered by another district court in the District of Maryland – because "she did not have any understanding of what was being asked of her or the detrimental significance of her case being dismissed without prejudice." ECF No. 14-1 at 7. This argument is unpersuasive for a number of reasons

As an initial matter, "the district court is the proper forum in which to bring Rule 60(b) motions for relief from *that* court's own judgments." *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 889 (4th Cir. 1999) (emphasis added). That is, relief under Rule 60(b) should typically be sought by motion to the court that rendered the judgment at issue. *See Rivera v. Thomas*, 316 F. Supp. 2d 256, 259 (D. Md. 2004) ("Relief under Rule 60(b) ordinarily is obtained by motion in the court that rendered the judgment") (quoting and citing 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2865 (2d ed. 1995)). Here, Atakulu filed her 60(b)(1) motion in the non-rendering court. Accordingly, and out of considerations for judicial economy and comity among district courts, this Court believes it is unwise for it to

---

*Grounds for Relief from a Final Judgment, Order, or Proceeding.* On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

disturb the judgment rendered in *Atakulu I* by reopening a case previously dismissed by a sister court. *See e.g.*, *Harper Maclean Solicitors v. Keaty & Keaty*, 260 F.3d 389, 395 (5th Cir. 2001) ("judicial efficiency and comity among district courts often counsel a registering court to defer ruling on Rule 60(b) motions in favor of the rendering court"); *Indian Head Nat. Bank of Nashua v. Brunelle*, 689 F.2d 245, 249 (1st Cir. 1982) (identifying "several policies which support such deference [to the rendering court], the most important of which is the reluctance of any federal court to interfere with the judgment of a court of coordinate level"); *Fuhrman v. Livaditis*, 611 F.2d 203, 205 (7th Cir. 1979) (recognizing that "comity among the federal district courts is furthered if the registering court refers the question of relief from judgment to the court which ordinarily entered the judgment; [and that] efficient judicial administration is furthered if the registering court defers to the original court, which is likely to be more familiar with the issues raised by the motion for relief from judgment"). Atakulu's motion to reopen *Atakulu I* is therefore denied.

Even if Atakulu's motion was properly before this Court, it would still fail. As mentioned, Atakulu seeks relief from the *Atalkulu I* dismissal order under Rule 60(b)(1) due to her "excusable neglect." *See* ECF No. 14-1 at 5-8. The Supreme Court articulated the standard for "excusable neglect" in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, setting forth four factors for courts to consider, including "[1] the danger of prejudice to the [non-movant], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." 507 U.S. 380, 395 (1993); *see also Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996); *Cronin v. Henderson*, 209 F.R.D. 370, 371, n. 1 (D. Md. 2002). "[A] district court should find 'excusable neglect' only in the

'*extraordinary cases* where injustice would otherwise result.'" *Thompson*, 76 F.3d at 534 (emphasis in original).   Thus, "[e]xcusable neglect is not easily demonstrated, nor was it intended to be." *Id*.   Moreover, "the most important factor considered by a court is the reason for the delay." *Rothenberg v. Marriott Int'l, Inc.*, 2008 WL 687033, *1 (D. Md. Feb. 29, 2008) (citing *Thompson*, 76 F.3d at 534); *see also States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010) ("[T]he *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import.").

Here, Atakulu makes various arguments that purportedly demonstrate excusable neglect – most of which stem from her self-proclaimed ignorance of the law and other relevant procedures. *See e.g.*, ECF No. 14-1 at 7 (stating that she "believed in good faith that she had met her obligations" when she filed her September 10, 2013 complaint); *id.* (stating that she believed she "did not need to take any further action on her complaint"); *id.* (stating that "she did not have any understanding of what was being asked of her or the detrimental significance of her case being dismissed with prejudice"); *id.* at 6 (arguing that her "circumstance as *Pro Se* operating without a paid advocate during the filing of her first complaint" constitutes excusable neglect). [2]   But without more, Atakulu's ignorance of the law and relevant procedures is not sufficient to demonstrate excusable neglect.   Indeed, the Fourth Circuit has expressly stated "that

---

[2] Atakulu also contends that her "difficulty reading through the documents she received from the court" and her inability to procure "proper eyeglasses" constitutes excusable neglect. ECF No. 14-1 at 7. This argument is similarly unpersuasive. Atakulu's inability to obtain the proper eyewear is certainly not the type of "extraordinary" circumstances that demonstrates excusable neglect. *See Provident Life & Acc. Ins. Co. v. Clarke*, 2008 WL 619289, *3 (E.D.Va. Mar. 4, 2008) (*pro se* plaintiff's multiple sclerosis, anxiety attacks, and "foggy mental state" was not excusable neglect for appealing too late; there was no evidence that he "was so impaired as to be unable to file" the appeal notice).

'inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.'" *Thompson*, 76 F.3d at 533 (citing *Pioneer*, 507 U.S. at 392). Accordingly, Atakulu has failed to demonstrate excusable neglect in this case, as her lack familiarity with the law and relevant procedures does not rise to the level of excusable neglect. *See e.g., Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988) (explaining that when a party is at fault, as opposed to an attorney, "the [judicial system's need for finality and efficiency in litigation] dominate and the party must adequately defend its conduct in order to show excusable neglect"); *Alexander v. Glut Food Coop*, 2013 WL 1741982, *3 (D. Md. Apr. 22, 2013) (no excusable neglect where plaintiff's "lack of familiarity with rules by law does not constitute excusable neglect and her mistake in not responding to Defendant's Motion for Summary Judgment was entirely in her control"); *Awah v. Midland Credit Mgmt. of Am.*, 2011 WL 3821600, *2 (D. Md. Aug. 26, 2011) ("pleadings prepared by *pro se* litigants are to be liberally construed, the same cannot be said for the interpretation of procedural rules in ordinary civil litigation"). For this additional reason, Atakulu's Motion to Reopen *Atakulu I* is denied.

### B.    Motion to Dismiss

Having thus denied Atakulu's Motion to Reopen *Atakulu I*, the Court is left to determine whether the complaint, as filed in the instant proceeding, states valid causes of actions. Specifically, Atakulu's complaint contains three causes of action, all of which arise under Title VII, including a claim for disability discrimination, age discrimination, and retaliatory discharge. Defendants have moved to dismiss these claims on the basis that they are untimely.

Pursuant to the Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e-5(f)(1), federal discrimination claims, including those alleged by Atakulu, must be filed within ninety days after

EEOC gives the claimant notice of his or her right to sue. *See Vogel v. Am. Home Products Corp. Severance Pay Plan*, 122 F.3d 1065 (4th Cir. 1997) (recognizing that "[t]he 90-day statute of limitations applies both to the discrimination and retaliation claims"). "A claimant who fails to file a complaint within the ninety day statutory time period mandated by Title VII, 42 U.S.C. § 2000e5(f) (1994), generally forfeits the right to pursue his claim." *Mann v. Standard Motor Products, Inc.*, 532 F. App'x 417 (4th Cir. 2013). "Although the ninety day time period is subject to equitable tolling, one who fails to act diligently cannot invoke equitable principles to excuse lack of diligence." *Houdeshell v. Artery Prop. Mgmt., Inc.*, 107 F.3d 866 (4th Cir. 1997).

It is undisputed that EEOC issued the Notice of Right to Sue to Atakulu on July 12, 2013. *See* ECF No. 1 at ¶ 80. Atakulu initially filed her complaint in *Atakulu I* on September 10, 2013. *Id.* at ¶ 81. This filing was made within the ninety day limitations period. *Id.* On November 25, 2013, however, that complaint was dismissed without prejudice. *See Atakulu v. Brown*, 13-cv-2633-PJM (D. Md. Nov. 25, 2013), ECF No. 4. Following the dismissal of her complaint, Atakulu did not file an amended complaint, nor did she file a Notice of Appeal. Instead, Atakulu waited nearly four months before taking any action. Then, on March 24, 2014, she filed the instant complaint. Because her instant complaint was filed more than ninety days from the issuance of EEOC's notice of right to sue, Atakulu's complaint is untimely on its face.[3]

Atakulu contends that her claims are saved under principles of equitable tolling. *See Watts-Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993) (noting that 90-day time limit in discrimination actions is subject to equitable tolling). Equitable tolling, however, is "reserved for those rare instances where – due to circumstances external to the

---

[3] Atakulu's reference to the 300-day EEOC statute of limitations has no bearing on her instant claim. *See* ECF No. 14-1 at fn. 1. This 300-day limitations period concerns the timing with which a claimant must file his or her initial charge of discriminations with the EEOC, not when a claimant must file his or her complaint in federal district court.

party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (internal quotation marks omitted). "[E]quitable tolling must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Gayle v. UPS*, 401 F.3d 222, 226 (4th Cir. 2005) (internal quotation marks omitted). In order to demonstrate entitlement to equitable tolling, Atakulu must "present (1) extraordinary circumstances, (2) beyond [her] control or external to [her] own conduct, (3) that prevented [her] from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (internal quotation marks omitted).

In support of her claim to equitable tolling, Atakulu advances three core arguments. First, she contends that given her *pro se* status she "should be granted special leniency regarding procedural matters" because she does "not have any familiarity with formal judicial proceedings or rules." ECF No. 14-1 at 7. However, Atakulu's "pro se status and any attendant lack of knowledge of the law is not the type of extraordinary circumstance which would justify equitable tolling." *Fishback v. Shearin*, 2011 WL 5995071, *2 (D. Md. Nov. 29, 2011). *See e.g.*, *Barrow v. New Orleans S.S. Assn.*, 932 F.2d 473, 478 (5th Cir. 1991) (refusing to apply equitable tolling where the delay in filing was the result of petitioner's unfamiliarity with the legal process or his lack of legal representation); *Smith v. McGinnis*, 208 F.3d 13, 18 (2nd Cir. 2000) (*pro se* status does not establish sufficient ground for equitable tolling); *Felder v. Johnson*, 204 F.3d 168, 171–173 (5th Cir. 2000) (lack of notice of AEDPA amendments and ignorance of the law are not rare and exceptional circumstances that warrant equitable tolling).

Next, Atakulu contends that because her "vision is poor, she had difficulty reading through the documents she received from the court and did not have the means for proper

eyeglasses." ECF No. 14-1 at 7. In this case, Atakulu's poor vision – however poor it may be given that she had filed her *pro se* complaint just weeks prior – is not the type of extraordinary circumstance that triggers the application of equitable tolling. *See e.g., Furr v. Robinson*, 2000 WL 152147, *2 (E.D.Va. Jan. 13, 2000); ("[i]lliteracy and ignorance of the law is not sufficient to create cause to lift or suspend a procedural bar to a federal cause of action"); *Cruz v. Warden, California Men's Colony*, 2003 WL 22016786, *1 (N.D. Cal. 2003) (general allegation of inability to speak English insufficient to toll statute of limitations); *Bustos v. Faulkenberry*, 2007 WL 540324, *3 (D.S.C. Feb. 15, 2007) (denying application of equitable tolling where the plaintiff "missed the deadline due to his limited grasp of the English language").

Finally, Atakulu contends that she is entitled to equitable tolling because the dismissal without prejudice of her prior complaint operated to toll the statute of limitations because at the time of that dismissal the ninety day statute of limitations had already passed. ECF No. 14-1 at 8. Thus, according to Atakulu, following the dismissal of her initial complaint, she did not have a "chance to refile her complaint to meet her original filing deadline []or to correct her mistake of not completing the Marshal forms." *Id.* However, "[t]he ninety-day statute of limitations period for Title VII actions is not tolled because the initial action was dismissed without prejudice." *Mann v. Standard Motor Products, Inc.*, 532 F. App'x 417 (4th Cir. 2013). *See also Angles v. Dollar Tree Stores, Inc.*, 494 F. App'x 326, 329 (4th Cir. 2012) (recognizing "the general rule that a Title VII complaint that has been filed but then dismissed without prejudice does not toll the 90–day limitations period"). Under these facts and law, Atakulu is not entitled to equitable tolling of the statute of limitations.

In the alternative, Atakulu argues that her new complaint is timely because under Fed.R.Civ.P. 15(c) it relates back to the timely complaint she previously filed in *Atakulu I*. "The

plain language of Rule 15, however, speaks of an 'amendment to a pleading,' not an entirely separate cause of action." *Bratton-Bey v. Straughan*, 2014 WL 359493, *5 (D. Md. Jan. 31, 2014). Thus, "[t]he relation back doctrine has application only in instances where an *original pleading* is amended . . . . The amendment does not, however, relate back to any prior proceedings which are not part of the action in question." *Id.* (emphasis added) (citing *Rayo v. State of New York*, 882 F.Supp. 37, 40 (N.D.N.Y.1995)); *see also Angles*, 494 F.App'x at 330 n. 8 ("In cases involving the relation back of an amended complaint to an 'original pleading,' under Rule 15(c), courts have held that a complaint in one case may not relate back to a complaint in another case to avoid the statute of limitations."); *Carter v. Tex. Dep't of Health*, 119 F.App'x 577, 581 (5th Cir. 2004) (upholding district court's holding that an "original pleading" within the meaning of Rule 15(c) cannot be a pleading filed in a different case); *Jones v. Morton*, 195 F.3d 153, 160-61 (3d Cir. 1999) (denying habeas petitioner's relation back argument, reasoning that "typically, when a complaint (or habeas petition) is dismissed without prejudice, that complaint or petition is treated as if it never existed," and a subsequent action "cannot be considered an amendment . . . but must be considered a new action."); *Benge v. United States*, 17 F.3d 1286, 1288 (10th Cir.1994) ("a separately filed claim, as opposed to an amendment or a supplementary pleading, does not relate back to a previously filed claim."). In short, Rule 15(c) has no application to Atakulu's March 28, 2014 complaint. Atakulu's complaint is therefore untimely and will be dismissed as such.

## VI.   CONCLUSION

Accordingly, for the aforementioned reasons, Plaintiff's Motion to Reopen Case *Atakulu v. Brown*, 13-cv-2633-PJM (D. Md. 2013) is DENIED and Defendants' Motion to Dismiss is GRANTED. Plaintiff's complaint is therefore DISMISSED with prejudice.

Dated: <u>June 26, 2014</u>                                    <u>        /S/        </u>
                                                              George Jarrod Hazel
                                                              United States District Judge